# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDIBERTO ROSALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-15-560-R |
| | ) | |
| THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant, the Board of Regents of the University of Oklahoma, has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). (Doc. No 36). Plaintiff Ediberto Rosales responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court views the evidence in the light most favorable to the nonmoving party, and must resolve all factual disputes and make all reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While the moving party bears the initial burden of showing that there is an absence of any issues of material fact,

*Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991), the movant need not negate the non-movant's claim. *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir.1994); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir.1994). To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Plaintiff was hired on March 12, 2013, as a Transportation Person III in the Roads & Hauling Department of the University's Facilities Management division. Plaintiff is Hispanic, of Guatemalan origin, and was the sole minority in his department. Plaintiff alleges that his termination effective November 13, 2014, was the result of race and national origin discrimination. Specifically, he contends that non-minority employees not of Guatemalan ancestry were not terminated when they suffered on-the-job injuries and pursued worker's compensation claims.

An employer may not discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff's discrimination claims are based on circumstantial evidence, therefore, the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies. *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). Accordingly, Mr. Rosales must first establish a *prima facie*

2

case of discrimination. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). If he is successful in doing so, the University must articulate a "legitimate, non-discriminatory or non-retaliatory rationale" for any adverse employment action. *Id*. The burden then shifts back to Plaintiff, "who must prove by a preponderance of the evidence that [the University's] reasons are a pretext for unlawful discrimination." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

To establish a *prima facie* case of discrimination, Plaintiff must present evidence that (1) he belongs to a protected class, (2) he "suffered an adverse employment action," and (3) the "action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Defendant does not challenge Plaintiff's ability to fulfill the first two requirements for establishing a suspect class. Defendant contends, however, that Plaintiff lacks any evidence to support an inference of discrimination. Defendant further argues that even if Plaintiff has sufficient evidence to establish a *prima facie* case that he cannot show pretext.

The facts of the case are largely undisputed. As noted above, Plaintiff was employed by the University in Facilities Management. He alleges he injured his lower back and knee while moving a desk on January 2, 2014. He continued his work that day and returned the next day. However, on Monday January 6, 2014, Plaintiff first reported his January 2, 2014 injury to Floyd Lehman who instructed Plaintiff to pick-up paperwork to see a doctor.[1] Plaintiff sought treatment from the campus health clinic on January 7, 2014, and the clinic

---

[1] Plaintiff contends that he informed "JT" of his injury on January 3, 2014. JT McCracken, however, was a co-worker, not Plaintiff's supervisor. Plaintiff's supervisor was Marty Jackson, although he would report to Floyd Lehman if Mr. Jackson was away. He does not recall telling any supervisor about his injury prior to January 6, 2014.

provided him with a work release, permitting him to return to work on January 13, 2014, without restriction. Plaintiff provided the release to Mr. Lehman. On January 9, 2014, Plaintiff visited the campus health clinic for the second time and was sent to the emergency room of Norman Regional Hospital, which referred him to a neurosurgeon, Dr. Daniel Cochran. The emergency room provided Plaintiff with a work release stating he could return to work in two days without restrictions. Plaintiff gave Mr. Lehman his work release note from the hospital the day after he sought treatment in the emergency room. Plaintiff reported to work on January 13, 2014, but was unable to finish the day.

Plaintiff saw Dr. Cochran on January 15, 2014, who issued a release that permitted Plaintiff to return to limited duty the next day, with a lifting restriction of ten pounds. The release remarks stated "limited duty, no lifting over 10 lbs." Def. Ex. 7. According to the Defendant this was the last release in the file that was utilized months later in the decision to terminate Mr. Rosales. Plaintiff provided the January 15, 2014 release to Mr. Lehman and alleges that Mr. Lehman indicated there was no work available to fit Plaintiff's limitations and that Plaintiff did not need to keep the department apprised of his injury status. Defendant contends that Mr. Lehman had no authority to exempt Plaintiff from checking-in or otherwise apprising the Department of his injury and leave status.[2] Plaintiff

---

[2] Defendant denies that Mr. Lathan had any authority to tell Plaintiff whether work was available or to excuse him from maintaining contact with the University while he was injured and the persons responsible for the termination recommendation allegedly were unaware of this alleged conversation.

contends that on February 17, 2014, Mr. Jackson, his supervisor, threatened him with termination if Plaintiff continued to pursue his worker's compensation claim.[3]

Dr. Cochran issued a second release notice on February 18, 2014, indicating Plaintiff could not return to work until he had seen an orthopedist noting his pending worker's compensation claim. Plaintiff alleges he provided this paper to either Mr. Lehman or Mr. Jackson, but if so, it was not made part of Plaintiff's file. Plaintiff apparently did not return to work thereafter, and was formally terminated on November 13, 2014, following the recommendation of a committee of the University that reviewed Plaintiff's file and noted he had been released to work on January 15, 2014, and failed to return, check-in or properly request additional leave as required by University policy. As noted, the committee allegedly did not have the February 18, 2014 release that indicated that Plaintiff required treatment by an orthopedist before he would be cleared to return to work.

As noted, this is a case of race and national origin discrimination. Construed in the light most favorable to the Plaintiff, the evidence, however, presents no basis from which the Court or a jury could conclude that Plaintiff's termination was related to either his race or his national origin. Although Plaintiff alleges that other non-minority or non-Guatemalan employees suffered on-the-job injuries and were not terminated because they pursued remedies via worker's compensation, Plaintiff fails to present evidence to support such a contention. The evidence consists of Plaintiffs testimony that other employees told him they had been injured at work. The evidence, however, is nothing more than hearsay.

---

[3] Defendant denies that Mr. Jackson had the authority to hire or fire employees even if the statement was made. It further avers via the affidavit of Sue-Anna Miller, Assistant Director of Facilities Management, that the committee that recommended dismissal was unaware of the alleged threat.

Furthermore, Plaintiff admitted that he was unaware whether any of the other employees allegedly injured on the job was ever threatened with termination if they chose to pursue a worker's compensation claim. Finally, Plaintiff fails to present any evidence that the decision-makers in his termination, that is the committee, had any knowledge of the alleged threat by Mr. Jackson. The Assistant Director of Facilities Management for the University, Sue-Anna Miller, provided an affidavit wherein she indicates that she served on the committee that reviewed Plaintiff's leave status and had personal knowledge about his termination. She indicated that she along with Pamela Mitchell, the Assistant Director of Human Resources/Employee relations, Chelle' Lodge Guttery, Director of the Disability Resource Center, and Myla Bryant, Worker's Compensation Specialist, made the termination recommendation. Miller states the committee that recommended termination was unaware that Plaintiff allegedly had a conversation wherein Floyd Lehmann instructed that Plaintiff did not need to keep the department informed about his ability to work. Miller contends she, along with two other people neither of whom Plaintiff allegedly consulted, were the persons in the Department who could determine if accommodation could be made, not Lehmann.

To the extent Plaintiff complains a mistake was made because the committee did not have his February 18, 2014 work release indicating that he could not return until he had seen an orthopedist, such an error does not render summary judgment inappropriate. Nothing in the absence of the documentation in the file prior to Plaintiff's termination has been linked to Plaintiff's race or national origin. Although Plaintiff contends that there is evidence that he was treated poorly or differently by his supervisors, he presents no such

evidence, as is required at this stage. In short, there is a total absence of evidence to support an inference of discrimination. As a result of this absence, the Court finds that Plaintiff has failed to state a *prima facie* claim of national origin or race discrimination. Furthermore, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination, his failure to return to work. Although Plaintiff contends that Defendant's decision was in error, and indeed it is apparent that the committee that made the decision to terminate Plaintiff was missing a crucial piece of information, the February 18, 2014 notice from Dr. Cochran indicating that Plaintiff could not return to work before he saw an orthopedist, Plaintiff presents no evidence from which the inference can be drawn that the absence of this document in Plaintiff's file was the result of either racial or national origin discrimination. Accordingly, even if the Court were to find that Plaintiff had presented sufficient evidence to support a *prima facie* case of discrimination, the Court would nevertheless conclude that Defendant was entitled to summary judgment because Plaintiff's evidence fails to establish the existence of a genuine issue of material fact with regard to pretext.

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. No. 36) is hereby GRANTED.

IT IS SO ORDERED this 5th day of October, 2016.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE